Thelma **MADSEN** and **Diana Lynn Madsen**, an infant, by Thelma Madsen, her parent and natural guardian, Plaintiffs and Appellants,

v.

**STATE of Utah, Utah State Board of Corrections, Samuel H. Smith, Leon Hatch, Tage Sponbeck and Doe I through V,** Defendants and Respondents.

No. 15215.

Supreme Court of Utah.

Aug. 1, 1978.

D. John Musselman, of Grow, Musselman & Watson, Orem, for plaintiffs and appellants.

Robert B. Hansen, Atty. Gen., G. Blaine Davis, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

WILKINS, Justice:

This is a wrongful death action brought by the wife and daughter of Thomas Madsen, who died while he was incarcerated at the Utah State Prison. Plaintiffs appeal from an order dismissing their complaint, dismissed on the ground that the claims are barred by the Utah Governmental Immunity Act.[1]

In their complaint, plaintiffs allege that Madsen died on March 1, 1974, following surgery at the Utah State Prison's hospital facilities. The complaint states that the State and its agents knew that surgery and medications would place Madsen in great peril due to his previously existing physical condition, and were negligent in that they proceeded with the surgery without adequate facilities and equipment to care for him, failed to provide adequate supervision and care for Madsen after the surgery, and further that the defendant's agents failed and neglected to examine Madsen or to summon competent medical help to his aid, after being informed by other inmates that he was having difficulty breathing after the surgery. The plaintiffs then plead res ipsa loquitur (which was not challenged below or here).

Plaintiffs first contention is that the Court erred in dismissing their complaint and argue that the Governmental Immunity Act does not bar plaintiffs' claims, as, (1) the operation of a hospital facility at the State prison is a proprietary and not a governmental function; and (2) plaintiffs' claims do not "arise out of" the decedent's incarceration within the meaning of Section 63–30–10(10) of the Act.

---

1. Sections 63–30–1, et seq. All statutory references are to Utah Code Annotated, 1953, as amended.

The Utah Governmental Immunity Act waives immunity for injuries resulting from the exercise of a governmental function.[2] In *Greenhalgh v. Payson City,* Utah, 530 P.2d 799 (1975), we recognized that the proprietary functions of governmental entities are not within the coverage of the Act. In that case this Court listed the pertinent factors to be considered in determining whether an activity is proprietary or governmental:

A primary one is whether the activity is something which is done for the general public good and which is generally regarded as a public responsibility. Coupled with this, other matters considered are whether there is any special pecuniary benefit to the City; and also, whether it is of such a nature as to be in competition with free enterprise.[3]

■ Considering these factors, the operation of a hospital at the prison facility must be regarded as a governmental function. The State has a responsibility to provide medical care for its prisoners, and in fulfillment of that duty it may operate a hospital at the prison facilities. No pecuniary benefit flows from such an activity; neither does the hospital compete for patients with other hospitals. Finally, since the operation of a state prison is in the public interest, activities which improve the quality of our prison system must also be in furtherance of the public good. The operation of a prison hospital is clearly such a program.

We turn, therefore, to a consideration of the Utah Governmental Immunity Act. The District Court found that the decedent's death arose out of his incarceration within the meaning of Section 63–30–10(10). That Section provides:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury:

\* \* \* \* \* \*

(10) arises out of the incarceration of any person in any state prison, county or city jail or other place of legal confinement,

. . .

Plaintiffs contend that a consideration of the legislative history of the above quoted section shows that subsection (10) was intended only to prevent harassing and frivolous suits by prisoners, which would disrupt orderly prison administration. They further contend that governmental immunity generally is held in disrepute and therefore this exception should be narrowly interpreted. A narrow interpretation, they suggest, requires a close causal connection between the injury and the incarceration, and in this case, the injury was caused by the surgery, and not by the incarceration.

Plaintiffs' recitation of the discussion which took place in the senate [4] during consideration of subsection (10), however, are not helpful, as there is nothing therein which would indicate that the Legislature intended to exclude a case such as this one from the operation of the statute. The plain meaning of the section reflects a legislative intent to retain sovereign immunity for any injuries occurring while the incarcerated person is in prison and under the control of the State.[5] Since this injury occurred while Madsen was under the control of prison officials, the governmental entities, viz., the State of Utah and the Board of Corrections, are both immune from liability.

Plaintiffs next contend that the Governmental Immunity Act is unconstitutional and against public policy, as applied. They argue that under our system of law, all persons, including a governmental entity as the superior of its employees, should be responsible, and therefore liable, for their

---

2. Section 63–30–3.

3. *Greenhalgh v. Payson City,* supra, at 801. See also *Ramirez v. Ogden City,* 3 Utah 2d 102, 279 P.2d 463 (1955).

4. See Recording of Senate Proceedings, Jan. 20th, 1965, Part III, Side 1, Lieutenant Governor's Office.

5. See *Epting v. State,* Utah, 546 P.2d 242 (1976), including the dissenting opinion of Mr. Justice Maughan.

own negligence. They also assert that Section 63–30–10(10) constitutes a denial of equal protection of the laws, and violates the 14th Amendment to the United States Constitution, and Article I, Section 24 of the Utah Constitution.

Plaintiffs assert that Madsen's right to life is a fundamental right and request this Court to apply what has come to be known as the "strict scrutiny" test. That test is that a statute which discriminates against a class of persons is presumed unconstitutional if it abridges a fundamental right of any person in that class, unless the State can show that it has such a compelling interest in the subject matter of the statute as to justify the resulting discrimination.

However, Madsen's right to life is not involved in this action. Rather, the case involves the plaintiffs' right to recover against the State for the loss of the support, care, comfort and services of their husband and father, which is clearly not the species of right which invokes the "strict scrutiny" test.

In the absence of a fundamental right, a statute is presumed to be constitutional unless one class of persons is treated differently under the law from another class unreasonably.

A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matters included as compared to those excluded from its operation, provided the differentiation bears a reasonable relation to the purposes to be accomplished by the act. *State v. Mason*, 94 Utah 501, 78 P.2d 920 (1938).

The exception of the waiver of governmental immunity for injuries arising out of the incarceration of any person in the state prison clearly bears a reasonable relation to the legislative purpose of preventing frivolous and harassing suits against the State.

▉ Plaintiffs also contend that the Court erred in dismissing their complaint against the individual defendants. With this contention we agree. The Governmental Immunity Act applies only to governmental entities and does not affect the personal liability of individuals for their own torts.[6]

The dissenting opinion recites "facts" which were never presented to the District Court, and as no evidence was taken, of course, no factual determinations were made. Plaintiffs appealed from the dismissal of their complaint, which states a claim for which relief may be granted against the individual defendants, and therefore, plaintiffs are entitled to their day in court.

The order dismissing the complaint is affirmed as to the State of Utah and the Board of Corrections, and reversed as to the individual defendants. The case is remanded to the District Court for further proceedings. No costs awarded.

HALL, J., concurs.

MAUGHAN, Justice (concurring).

In concurring, I am constrained to think a narrower construction of 63–30–10(10) is merited, where the state engages in conduct not directly related to incarceration.

ELLETT, Chief Justice (concurring and dissenting).

I concur in holding that the State of Utah and the Utah Board of Corrections are immune from suit; however, I disagree with that part of the decision which permits the cause to continue against the individual defendants.

The case of *Sheffied v. Turner*[1] is similar to the instant matter. There the warden of the prison was sued because another prisoner stabbed the plaintiff causing the loss of sight in one eye. The claim there was made that the warden was not entitled to sovereign immunity. However, in holding that he was, this Court said:

---

6. *Cornwell v. Larsen*, Utah, 571 P.2d 925 (1977).

1. 21 Utah 2d 314, 317, 445 P.2d 367, 369 (1968).

Upon our consideration of the various aspects of the problem and an examination of the authorities which have dealt with it, it is our opinion that in a situation such as this, where one inmate has injured another, the warden and other prison officers are protected by the doctrine of sovereign immunity against claims of negligence so long as they are acting in good faith and within the scope of their duties, and that they could not be held liable unless they were guilty of some conduct which transcended the bounds of good faith performance of their duty by a wilful or malicious wrongful act which they know or should know would result in injury.

In the case of *Obray v. Malmberg*[2] the plaintiff sued the sheriff for failure to investigate a burglary of plaintiff's store. This Court, in affirming the dismissal of the complaint by the trial court, said:

Aside from plaintiff's points on appeal which we think are not dispositive, we believe that defendants' contention that failure by a public sheriff to investigate a crime claimed by an individual to have been committed, ordinarily is a matter of judgment and discretion, not actionable or compensable, and not pursuable by an individual since the public official's duty is to the public,—he being accountable to and removable in a proper proceeding, by the public.

The case of *Anderson Investment Corp. v. State, et al.*[3] was one where individual members of the State Road Commission were sued. The trial court dismissed the complaint and the Supreme Court affirmed, saying:

Members of a state commission will be liable for their torts if committed not in the course of their official duties to the same extent as will any other person, but here these commissioners were in the performance of their duties in the exercise of the police power of the State to better provide for the orderly flow of traffic upon the highways of this State. They are thus given the same immunity from suit as is given to the State of Utah or to its commissions.

The case of *Roosendaal Construction v. Holman*[4] was a case wherein the members of the State Tax Commission were sued by the plaintiff therein. The trial court dismissed the complaint and this Court affirmed, saying:

It appears from the record in this case that the defendants in the matters herein complained of by the plaintiff were pursuing their duties in the collection of excise taxes the defendants claim to be due the State. It also appears that the acts complained of were performed in good faith by the defendants and within the statutory authority granted to them. The ruling of the court below that the defendants are not subject to a suit for damages in their private capacities is correct.

The facts of the instant matter clearly show that the appellants were acting in good faith and within their duties in performing an operation *requested by the inmate* and one which, by improving his appearance would have tended to better prepare him for an earlier parole from prison and an improved chance of becoming a law-abiding citizen.

Section 63–30–10(10) cited in the prevailing opinion clearly states that governmental immunity is not waived when the cause "arises out of the incarceration of any person in any state prison . . . .".

The deceased inmate was incarcerated in the Utah State Prison. Medical treatment and psychiatric care for inmates are just as much a part of the prison routine as are the feeding and sheltering of those inmates. It is all done with a view of making law-abiding citizens out of criminals.

I think the judgment of the trial court was made pursuant to the rulings heretofore made by this Court, and it should be affirmed.

2.   26 Utah 2d 17, 19, 484 P.2d 160, 162 (1971).

3.   28 Utah 2d 379, 382, 503 P.2d 144, 147 (1972).

4.   28 Utah 2d 396, 399, 503 P.2d 446, 448 (1972).

CROCKETT, J., concurs in the views expressed in the concurring and dissenting opinion of ELLETT, C. J.